**TRANS-CONTINENT REFRIGERATOR CO., Plaintiff-Appellant,**

v.

**A LITTLE BIT OF SWEDEN, INC., and Thomas Poss and Charlotte Poss, jointly and severally, Defendants-Appellees.**

No. 81CA1138.

Colorado Court of Appeals, Division 2.

Oct. 14, 1982.

Rehearing Denied Nov. 4, 1982.

Certiorari Denied Jan. 17, 1983.

Kritzer & Chalat, James H. Chalat, Denver, for plaintiff-appellant.

Cogswell & Wehrle, C. Scott Crabtree, Jeremy Bernstein, Denver, for defendants-appellees.

STERNBERG, Judge.

Plaintiff, Trans-Continent Refrigerator Co., brought suit for breach of contract against A Little Bit of Sweden, Inc., and Thomas and Charlotte Poss, non-resident defendants. The trial court dismissed the action without prejudice for lack of personal jurisdiction and Trans-Continent appeals. We affirm.

The following findings were made after a hearing on defendants' motion to quash service of process and to dismiss: The Posses called Trans-Continent in Colorado from Wisconsin to inquire about the purchase of refrigeration equipment for their business, A Little Bit of Sweden, Inc. Trans-Continent's salesman in Wisconsin contacted the Posses and negotiated a purchase contract and credit arrangement. The Posses signed the necessary documents in Wisconsin, after which the salesman mailed them to the main office in Denver. There, the credit application was processed and the purchase contract formally accepted. The goods were then shipped from Colorado to Wisconsin, and the Posses commenced mailing payments to Colorado. Sometime thereafter, the Posses notified Trans-Continent in Denver that they were closing their business.

Based upon these facts, Trans-Continent asks us to rule that the Posses have such contacts with the state of Colorado as would make it reasonable to require them to defend the suit here.

I.

Trans-Continent places principal reliance on *Le Manufacture Francaise des Pneumatiques Michelin v. District Court,* 620 P.2d 1040 (Colo.1980), a products liability case. They assert that no reasoned basis exists to distinguish between long-arm jurisdiction predicated on commission of a tort within the forum state and transacting business within the forum state. However, the question is not whether suit is based on tort or contract. Any exercise of in personam jurisdiction over a non-resident defendant is ultimately limited by the due process clause of the Fourteenth Amendment. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Tort and contract cases present different factual analyses but do not require the use of different standards.

For any exercise of in personam jurisdiction the non-resident defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington, supra.* The measure of such contacts is frequently stated as whether by some act the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Michelin, supra; Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1969). But once such an act is found, a determination must

be made whether the activities of the defendant or the consequences of those activities have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Van Schaack & Co. v. District Court,* 189 Colo. 145, 538 P.2d 425 (1975). The test, however variously stated, seeks to balance the burden on the defendant with the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In products liability cases the defendant is deemed to have availed itself of the privilege of conducting activities within the forum state when it delivers its products into the stream of commerce with the expectation that they will be purchased by customers in the forum state. *World-Wide Volkswagen, supra; Michelin, supra.* The reasonableness of exercising personal jurisdiction in such cases is determined by whether the sale of the product was an isolated occurrence or an effort to serve the market for its products in other states. If the test is met, the defendant has clear notice that it is subject to suit there, and the forum state can legitimately provide a forum to its citizens injured by the alleged tortious conduct of non-residents.

■ In contract cases, the task of assessing the defendant's contacts is more complicated. Trans-Continent directs our attention to *Halliburton Co. v. Texana Oil Co., Inc.,* 471 F.Supp. 1017 (D.Colo.1979), where a telephone call to Colorado was deemed to be "transacting business" in Colorado, and to *Dwyer v. District Court,* 188 Colo. 41, 532 P.2d 725 (1975), where execution of a contract was sufficient for the defendant purposefully to have availed himself of the privilege of conducting business within this state. But, a single act does not uniformly result in the exercise of jurisdiction when that act is not substantial enough to make the defendant "present." *See E.R. Callen-*

*der Printing Co. v. District Court,* 182 Colo. 25, 510 P.2d 889 (1973); *Safari Outfitters, Inc. v. Superior Court, supra; Automated Quill v. Chernow,* 455 F.Supp. 428 (D.Colo. 1978); *Hydraulics Unlimited Mfg. Co. v. B/J Manufacturing Co.,* 323 F.Supp. 996 (D.Colo.1971). "In effect, the standards are those of a case by case analysis considering, among other things, regular and systematic activity, continuity of contacts, promotion and utilization of channels of interstate commerce, benefits and protections afforded by the state, casualness of presence, and an estimate of inconvenience." *People ex rel. Jeffers v. Gibson,* 181 Colo. 4, 508 P.2d 374 (1973).

■ We do not agree with Trans-Continent that in this case the contract and attendant activities, although arguably a purposeful act within this state, have a "substantial enough connection with this state to make the exercise of jurisdiction over the defendant reasonable." *Van Schaack, supra.* Unlike the situation in *Dwyer* and *Van Schaack,* where the contract pertained to real estate located within Colorado, the Posses' activity was not specifically directed to Colorado, they did not come to Colorado to negotiate nor to execute the contract, and the contract was neither part of nor intended to give rise to extensive activity within the state. We hold that the quality and nature of the defendants' activity in Colorado is insufficient to permit exercise of in personam jurisdiction by this state. Allowing jurisdiction here would be contrary to the "degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit" that is ensured by the due process clause of the Fourteenth Amendment. *World-Wide Volkswagen, supra.*

## II.

■ To argue that the exercise of jurisdiction is appropriate on the facts presented here, Trans-Continent also relies on *McGee v. International Life Insurance Co.,* 355 U.S.

220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), for the proposition that as the flow of commerce between the states has increased the reaches of personal jurisdiction have undergone a corresponding increase. By asking us to increase the reaches of personal jurisdiction, Trans-Continent ignores a fundamental issue present when we discuss minimum contacts: the continued existence of state lines as a limitation on a state's sovereignty, *World-Wide Volkswagen, supra,* and the effect on interstate commerce of subjecting casual buyers to the jurisdiction of the seller's state.

The defendants' contact with the state of Colorado consists of one transaction with a Colorado corporation. They have no office or agent here and no license to do business in this state. In contrast with *McGee,* where the defendant took advantage of a foreign state's market, the Posses' relationship with Colorado arose when a Colorado corporation gained the advantage of a foreign state's market. "Permitting in personam jurisdiction over such passive out of state buyers who did no more than agree to purchase goods from a Colorado corporation would [have] a potential adverse effect upon the interstate commerce conducted by businesses in this state." *Callender Printing Co. v. District Court, supra.* If merely purchasing goods sold or manufactured in a state is enough to confer jurisdiction in a state, then it is hard to conceive of any case where the long-arm statutes do not apply, and there would indeed be no limits to the reach of each state's jurisdiction.

In *McQuay v. Samuel Schlosberg, Inc.,* 321 F.Supp. 902 (D.Minn.1971), with similar facts, the court stated in language appropriate here:

> "If plaintiff's position is sound, then it or any other Minnesota manufacturer can sue all of its customers wherever they may be located in the United States who for good or bad reason have failed to pay their bills or the purchase price of goods.... By the same token, if this were sound, the plaintiff could be sued in any state where it submits a purchase order for raw materials and supplies and the goods are shipped to Minnesota. This concept almost completely obliterates state lines and would lead to the result that anyone who deals with a Minnesota resident in any way or buys a product manufactured by any Minnesota company, can be brought into the Minnesota courts to respond to a suit."

The trial court's dismissal of the suit is affirmed, without prejudice to plaintiffs' right to refile in the appropriate jurisdiction.

SMITH and VAN CISE, JJ., concur.